IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2001

## STATE OF TENNESSEE v. DANIEL L. SCOTT

**Appeal as of Right from the Criminal Court for Shelby County**
**Nos. 98-13731, 98-13732, 98-13733     Joseph B. Dailey, Judge**

---

### No. W1999-01309-CCA-R3-CD  - Filed July 19, 2001

---

The appellant, Daniel L. Scott, entered a best interest guilty plea in the Shelby County Criminal Court to one count of animal fighting, one count of cruelty to animals, and one count of keeping unvaccinated dogs. The trial court sentenced the appellant to incarceration in the Shelby County workhouse for one year for the animal fighting conviction, six months for the animal cruelty conviction, and thirty days for the keeping unvaccinated dogs conviction. The trial court further ordered that the sentences be served concurrently. The appellant requested probation, which request the trial court denied. On appeal, the appellant raises the following issue for our review: whether the trial court erred in denying the appellant probation. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Wayne Emmons, Robert C. Brooks, and Larry Copeland, Memphis, Tennessee, for the appellant, Daniel L. Scott.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background
On March 19, 1998, Thomas Arnold, an officer with the "K9" or dog squad of the Memphis Police Department, was searching for a suspected car thief in the area around Margaretta

Street.[1]  During the course of his search, Arnold noticed a large number of animal bones and parts in various stages of decay in the area behind the property of the appellant, Daniel L. Scott.  Arnold also observed numerous dogs in the appellant's unfenced backyard.  The dogs were on eight to ten foot heavy chains located beside blue plastic barrels that served as makeshift dog houses, and the dogs were in standing water and mud.  There was no noticeable food near any of the dogs, and the air reeked of a foul odor similar to sewer water.  Arnold contacted Patricia Ann Wright with the Memphis Animal Shelter and reported possible animal cruelty.

The next day, a Friday, Arnold and animal control officer Carolyn Lynch returned to the appellant's property to investigate.  They repeatedly attempted to locate the owner of the property, but could find no one at the home.  The officers discovered a total of twenty-eight Pit Bull dogs on chains.  The dogs had no accessible food or sanitary water, and they either had no bedding in their "doghouses" or the bedding was soaked with rainwater.  Green slime was forming on the barrels.  Arnold testified that the animals were "cold," "shivering," and "wet," with scarring on their heads and faces.  Additionally, Arnold stated that

> [t]here were some skeletons that were thrown, like I said, down the back of that property on Margaretta backs up to the railroad tracks. . . . There were also some carcas[s]es that had not decayed completely yet that were also on that hillside.
>
> . . . [T]he smell that I was picking up was from other dogs that had been thrown over into this wooded area that were in various forms of decay.  Some of them were blown up, swollen up, it appeared that they had just been there a short time.  Others there was just the skin draped over the skeleton.  And then others were just the skeleton of the animals.

Additionally, the officers found "rooster[s], . . .chicken[s], some type of hen that were in separate cages away from the dogs that were being kept on the property."

Also located on the property were a boxed-in conveyor belt used as a treadmill,  a "carousel" which was surrounded by a worn groove in the dirt and was used to make the dogs run, and a fighting ring with blood on it, all of which indicated to the officers that the animals were being trained to fight.  Anthony Rudolph with the Organized Crime Unit ("OCU") of the Memphis Police Department executed a search warrant on the appellant's property on the Monday following the discovery of the dogs.  When the OCU arrived at the appellant's residence, the treadmill and carousel had been removed.  However, Rudolph testified that he was able to see the circular rut in the dirt and the center pole that indicated where the carousel had been located.

Due to the nature of the dogs' living conditions, the animals were taken into custody by the Memphis Animal Shelter on the Friday of their discovery.  The appellant later contended that

---

[1] We gleaned the facts underlying the appellant's offenses from the transcripts of the suppression hearing, the guilty plea hearing, and the sentencing hearing.

he was boarding the dogs for other people and was not running a dog fighting business, specifically alleging that most of the dogs did not belong to him. However, he never attempted to claim any of "his" dogs from the animal shelter, nor did he reveal the identity of the owner(s) of any of the animals. Eventually, all of the dogs taken into custody were euthanized.

As a result of the foregoing, the appellant, Daniel L. Scott, entered a best interest guilty plea in the Shelby County Criminal Court to one count of animal fighting, a class E felony; one count of cruelty to animals, a class A misdemeanor; and one count of keeping unvaccinated dogs, a class C misdemeanor.[2] The trial court sentenced the appellant to incarceration for one year in the Shelby County workhouse for the animal fighting conviction, six months for the animal cruelty conviction, and thirty days for the keeping unvaccinated dogs conviction.[3] The trial court further ordered that the appellant serve the sentences concurrently. The appellant requested probation, which request the trial court denied, finding that to grant probation would depreciate the seriousness of the offense, the appellant's actions were detrimental to society and promoted gambling, and the appellant was not credible. The appellant now appeals the trial court's ruling.

## II. Analysis

Our review of the manner of service of the appellant's sentences is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Regardless, the burden remains on the appellant to demonstrate the impropriety of his sentences. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In conducting our de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103,-210 (1997); see also Ashby, 823 S.W.2d at 168.

---

[2] A best interest guilty plea, also known as an Alford plea, may be entered by an appellant who wishes to plead guilty yet proclaim his innocence. See North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S. Ct. 160, 167-168 (1970). The law of this state provides that the trial court may accept the appellant's best interest guilty plea provided that the trial court is satisfied that there is a factual basis for the plea. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

[3] At the beginning of the sentencing hearing, the trial court's comments indicate that the appellant was sentenced to six months incarceration for the animal fighting conviction, a class E felony. See Tenn. Code Ann. § 39-14-203(c)(1) (1997). However, the guilty plea proceedings, the negotiated plea agreement, and the judgment all reflect that the appellant was sentenced to one year incarceration for the animal fighting conviction. Moreover, one year is the statutory minimum sentence for a class E felony conviction. Tenn. Code Ann. § 40-35-111(b)(5) (1997). Therefore, from the record and the comments of the appellant's counsel, it is clear to this court that the appellant was sentenced to incarceration for one year for his conviction for animal fighting.

The length of the appellant's sentences was determined by the appellant's negotiated plea agreement. However, in determining the manner of service of the appellant's sentences, we note that the trial court never specifically stated that it considered the appellant a presumptive candidate for probation. Ashby, 823 S.W.2d at 168. Moreover, from the statements of the trial court we are unable to conclude that the trial court considered the sentencing principles. We find that these errors by the trial court remove the presumption of correctness. Therefore, we will review the trial court's denial of probation purely de novo.

To begin our analysis, we recognize that an appellant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, an appellant who is an especially mitigated or standard offender convicted of a class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant is a standard Range I offender who was convicted of a class E felony; therefore, he is presumed to be a favorable candidate for alternative sentencing. See State v. Robert Duff, No. 02C01-9307-CR-00152, 1995 WL 390951, at *3 (Tenn. Crim. App. at Jackson, June 28, 1995). Although the presumption of favorability applies to the appellant's E felony conviction, no such presumption applies to his misdemeanor convictions. State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995).

"[A]fter a trial court determines that a defendant is entitled to the statutory presumption, it must then determine whether there is sufficient evidence to overcome this presumption." Duff, No. 02C01-9307-CR-00152, 1995 WL 390951, at *3. Put another way, this presumption may be rebutted by "evidence to the contrary." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). If sufficient evidence exists in the record to rebut the presumption of the appellant's favorability for probation, then "the trial court is justified in imposing a sentence of straight confinement." Duff, No. 02C01-9307-CR-00152, 1995 WL 390951, at *3.

The following sentencing considerations, contained in Tenn. Code Ann. § 40-35-103(1), may constitute "evidence to the contrary":
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Zeolia, 928 S.W.2d at 461; see also State v. M. Steven Lilly, No. 03C01-9505-CR-00143, 1996 WL 87441, at *3 (Tenn. Crim. App. at Knoxville, March 1, 1996). Additionally, the appellant's "potential or lack of potential for . . . rehabilitation . . . should be considered in determining the sentence alternative." Tenn. Code Ann. § 40-35-103(5); see also State v. Chrisman, 885 S.W.2d 834, 840 (Tenn. Crim. App. 1994).

The trial court's statements reflect its finding that probation should be denied because of the seriousness and magnitude of the offenses, because the appellant's actions were detrimental to society, because the appellant's actions encouraged gambling, and because the appellant was not credible in his testimony before the court. However, no proof exists in the record to support a determination regarding the detrimental effect of the appellant's behavior on society; therefore, the trial court impermissibly denied probation on that basis. Cf. State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Nevertheless, we conclude that the trial court did not err in denying probation based on the seriousness of the offense, the appellant's lack of honesty with the trial court, and the deterrent effect of the appellant's incarceration.

This court has previously found that the nature and circumstances underlying the criminal conduct may alone give rise to the denial of probation. Tenn. Code Ann. § 40-35-210(b)(4). See State v. Fletcher, 805 S.W.2d 785, 788-89 (Tenn. Crim. App. 1991). When imposing confinement based upon the seriousness of the offense, the trial court must first determine if "'the circumstances of the offense as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" Zeolia, 928 S.W.2d at 462.

The appellant's E felony conviction is for animal fighting in violation of Tenn. Code Ann. § 39-14-203(a)(1) (1997), which statute provides that it is unlawful for any person to own, possess, keep, use, or train any dog for the purpose of fighting, baiting or injuring another such animal, for amusement, sport, or gain. Notwithstanding the appellant's best interest guilty plea, the facts contained in the record clearly show that the appellant kept the confiscated Pit Bulls for the purpose of fighting them for sport or gain. There was evidence that the appellant trained the dogs with a treadmill and a carousel and then put them in a ring to fight. Testimony showed that the dogs themselves were scarred. Specifically, Officer Lynch testified that she knew the appellant was involved in dog fighting "[b]y the equipment and the scars [on the dogs]. One dog had staples in the head, the wounds. There were several dogs with the legs messed up where they probably had been broken at one time and healed back. So we were real sure there was fighting going on." Moreover, the appellant possessed business cards advertising himself as a dog fighter and kept a notebook containing the names of people who owed him money.

Additionally, the record reflects that the appellant kept the twenty-eight dogs in atrocious conditions. The dogs were confined by heavy chains, provided inadequate shelter, forced to live in standing water, surrounded by their own feces, with no available sanitary food or water. Patricia Ann Wright, a supervisor with the Memphis Animal Shelter, testified at the sentencing hearing that the conditions at the appellant's residence were collectively the worst she had ever seen. Specifically, she stated, "there were just so many of them and just so many with scars and, you know, just too many for one person to really care for properly, you know."

In denying the appellant probation based upon the seriousness of the offense, the trial court explicitly explained:

We are Americans and we live in this society and this is our culture. I mean, if he wants to move to Ho Chi Minh City and raise dogs and fight them, go for it. But we live in Memphis, Tennessee and . . . our legislature . . . chose to make this conduct illegal. And it may not be illegal in Hong Kong or in Bangkok, but is illegal in Memphis, Tennessee. . . . And if [the appellant] feels that culturally there needs to be a change, then, perhaps, he should remove himself to a different culture where this conduct is looked upon with favor . . . [b]ut in our culture this is illegal.

. . . .

I think our legislature clearly and objectively has said that in our culture this conduct and the conduct that we saw at the hearing on the motion to suppress flies in the face of what's acceptable to most of the people in the state of Tennessee. It's outrageous, in my opinion. Obviously, we're not talking about humans. Obviously, we're talking about dogs. But it's still outrageous.

. . . .

And I think that the proof that I heard, both at the suppression hearing and today paints a scene that, in my opinion, is shocking. The number of dogs that were kept in that backyard; the manner in which they were kept; the dead carcasses over the back fence. I believe there was one dead carcass . . . hanging over a tree limb. . . . The lack of shelter and food and clean water. The state of disease and injury to the dogs. The treadmill with the blinders on the sides. The carousel, which mysteriously disappeared after the first officers were out there.

We agree with the trial court that circumstances surrounding the appellant's offense were sufficiently shocking and reprehensible to justify denying the appellant probation based upon the seriousness of the offense. See Zeolia, 928 S.W.2d at 462; State v. Clessie T. Jaco, No. 01C01-9802-CC-00091, 1998 WL 917805, at *4 (Tenn. Crim. App. at Nashville, December 21, 1998).

Furthermore, the trial court found that the appellant was not credible when testifying before the court. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); State v. Alvin Lee Lewis, No. 01C01-9404-CC-00125, 1995 WL 115853, at *4 (Tenn. Crim. App. at Nashville, March 14, 1995). During the sentencing hearing, the appellant admitted that he has previously been convicted of being a spectator at a dog fight in Oklahoma. However, the appellant claimed that he was not truly a spectator at a dog fight, merely a spectator at a dog show where a fight erupted. The appellant entered a best interest guilty plea on the charges surrounding that offense.

Additionally, the appellant testified at the sentencing hearing that he currently has nine dogs and has built a new facility in which to house them. He continued to deny ownership of most of the confiscated dogs, alleging instead that he was boarding the majority of the dogs for other people for a charge of twenty dollars per week. The appellant contended that the dogs were not

injured in dog fights but were scratched when one dog would get loose from its chain and attack another dog. The appellant alleged that the business cards found at his residence proclaiming him to be a dog fighter were merely misprints. He further denied ever seeing the gambling notebook even though, on the inside cover of the notebook was a hand-drawn figure representing the appellant with a speech balloon coming out of the figure's mouth saying, "My name is Dan!!" The words "u people o me cash" surround the figure.

We also note that the appellant expressed the extent of his remorse by testifying that "I'm sorry for what my friends helped me get into." See Jaco, No. 01C01-9802-CC-00091, 1998 WL 917805, at *4 (stating "while the defendant did express remorse for his actions, he placed a portion of the blame on [others which] suggests the defendant is not entirely able to accept full responsibility for his actions; full acceptance [being] a better indication of amenability to rehabilitation"). Furthermore, the appellant only admitted to "technical violations of the law." Additionally, the appellant contends that someone else put the dead dogs on his property and removed the carousel and treadmill from his property. Inconsistently, the appellant also asserted that the dogs died of parvo; however, the animal shelter found no indication that any of the remaining animals had been exposed to parvo. The appellant introduced some veterinary bills into evidence to support his claim that some of the dogs had received medical treatment. The appellant maintained that he is supporting his three children and has learned his lesson.

> This court has previously stated that
> [t]he trial judge was in the best position to determine the attitude and demeanor of the Defendant on the witness stand. We are not in a position to view the Defendant differently upon the record which is before us. A Defendant's credibility and willingness to accept responsibility for his offense are circumstances relevant to determining his rehabilitation potential.

Lewis, No. 01C01-9404-CC-00125, 1995 WL 115853, at *4. The trial court found the appellant's story to be utterly incredulous, and concluded that, contrary to the appellant's contentions, the proof indicated that the appellant was engaged in a large dogfighting operation. Specifically, the trial court stated, "[H]is effort to deny [his culpability] today offended me. It offended me greatly because I think the proof is compelling and overwhelming." In connection with this issue, our supreme court has stated that

> there is no rule in this State requiring a Defendant to admit his guilt in order to seek probation. If this had been the sole basis for the trial court's denial of probation, we . . . would have reversed the trial court. However, . . . the Defendant's untruthfulness . . . is certainly a factor which the court may consider at a probation hearing. . . . [T]he United States Supreme Court [has] held that a defendant's false testimony, observed by the trial court during the trial, [is] probative in sentencing as having a bearing on a defendant's prospect for rehabilitation.

State v. Bunch, 646 S.W.2d 158,160-161 (Tenn. 1983)(citations omitted). The record supports the trial court's finding that the appellant was untruthful with the court and refused to fully accept responsibility for his actions, which indicate his lack of rehabilitative potential.

Additionally, we note that deterrence may be considered as a factor in denying the appellant probation. In Hooper, 29 S.W.3d at 10-12, our supreme court explained the application of the deterrence factor:

> [W]e will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.
>
> . . . .
>
> [T]rial courts should consider factors, such as the following, when deciding whether a need for deterrence is present and whether incarceration is "particularly suited" to achieve that goal:
>
> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
>
> . . . .
>
> 2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
>
> . . . .
>
> 3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
>
> . . . .
>
> 4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
>
> . . . .
>
> 5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.
>
> . . . .
>
> Additional facts may be considered by the sentencing court, provided that (1) the sentencing court states these additional factors on the record with specificity, and (2) the presence of these additional factors is supported by at least some proof.

In the present case, it is clear to us that the appellant was intentionally keeping the Pit Bulls in order to fight them to "profit or gain from the criminal behavior." Specifically, there was evidence of the appellant's involvement in a gambling enterprise for pecuniary gain associated with his dogfighting operation. See State v. Alexander A. Lee, No. W1999-01804-CCA-R3-CD, 2000 WL 1840077, at *3 (Tenn. Crim. App. at Jackson, December 14, 2000), perm. to appeal denied, (Tenn. 2001). Behavior motivated by a desire for pecuniary gain is considered more deterrable than actions committed negligently or in the heat of passion. Hooper, 29 S.W.3d at 11. The appellant's involvement in gambling was proven in part by a notebook containing the names of individuals and the amounts that the individuals owed the appellant. Accordingly, the appellant's gambling enterprise could be considered a "criminal enterprise" in which the appellant "substantially encouraged or assisted others" to participate. See State v. Timothy C. Jewell, Jr., No. W2000-00998-CCA-R3-CD, 2001 WL 524368, at *4 (Tenn. Crim. App. at Jackson, May 15, 2001); see also State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997) (stating that when there is proof in the record that another individual involved in the offense in question went unpunished, a denial of probation may be necessary to deter others from committing similar offenses). Furthermore, the appellant admitted at the sentencing hearing that he had previously been convicted in Oklahoma of being a spectator at a dog fight, which is "criminal conduct of the same type as the offense in question." Hooper, 29 S.W.3d at 12; cf. State v. Beverly K. Meeks, No. M2000-00435-CCA-MR3-CD, 2000 WL 1879520, at *5 (Tenn. Crim. App. at Nashville, December 28, 2000). The appellant has not met his burden of demonstrating to this court that the sentence imposed is improper.

### III. Conclusion
Based on the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE